# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **REPORT AND** |
| APRIL SHANNON HUTSON, et al., | **RECOMMENDATION** |
| | Case Number: |
| **Defendants** | 1:10cr00002-027 |

This matter is before the undersigned on the Defendant's Motion To Dismiss Indictment, (Docket Item No. 633), filed on behalf of Brandon Kincer, ("Motion"). Based on the arguments and representations of counsel and for the reasons set forth below, I recommend that the court deny the Motion.

*I. Facts*

Kincer is charged along with 35 other defendants with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, oxycodone and hydrocodone in violation of 21 U.S.C. § 846. The Indictment alleges that this conspiracy existed "[o]n or about and between January 1, 2003 and January 13, 2010." (Docket Item No. 57). Kincer was born in April of 1989. Kincer did not turn 18 years of age until April 2007, more than four years after the inception of this alleged conspiracy.

The government initiated this drug conspiracy charge by Criminal Complaint prior to the return of the Indictment. The Affidavit offered in support of the Criminal Complaint contains the following allegations against Kincer:

> On December 1, 2008, Brandon Kincer was interviewed in Bristol, TN. Kincer stated that Kevin Roark was the ex-husband of Shannon HUTSON. KINCER stated that he had observed ROARK in possession of seven (7) or eight (8) ounces of cocaine and 100 dosage units of 80 mg OxyContin. Kincer stated that he had purchased ounces of cocaine from ROARK.
>
> ... KINCER stated that Josh SNYPES was a cocaine distributor, and a son of Shannon HUTSON. KINCER stated that he had purchased "8 balls" (1/8 ounce) of cocaine and eight (8) to ten (10) dosage units of OxyContin from SNYPES at a time. KINCER stated that he was with SNYPES when SNYPES met with his sister, Kari PARKS, to obtain OxyContin and cocaine. KINCER stated that SNYPES received OxyContin from PARKS, but she would not part with the cocaine as she was "waiting on more."
>
> ... KINCER stated that Robert PARKS was a cocaine distributor, and a son of Shannon HUTSON. KINCER stated that he had purchased 1/4 ounces of cocaine from PARKS on approximately seven (7) different occasions. KINCER stated that these transactions occurred at PARKS' trailer located on Weaver Pike in Bristol, TN.
>
> ...KINCER stated that Randy PARKS was the son of Rhonda HUTSON. KINCER stated that he purchased approximately 1/8 ounce of cocaine to one (1) ounce of cocaine from PARKS on approximately fifteen (15) occasions. KINCER stated that PARKS charged $175.00 to $200.00 per 1/8 ounce and $1,000.00 to $1,200.00 per ounce of cocaine.
>
> KINCER stated that PARKS resided with HUTSON on Broyles Ln. in Bristol, TN. KINCER stated that the cocaine transactions with PARKS occurred in the driveway of HUTSON's residence. KINCER stated that on occasion, PARKS had to go to the residence of Nate LNU

to obtain the cocaine. KINCER stated that Nate LNU resided in the Bristol Heights Trailer Park on Weaver Pike.

...KINCER stated that Rhonda HUTSON was a large scale cocaine distributor in Bristol, TN. KINCER stated that in 2007, he accompanied Paul Thomas to the residence of HUTSON approximately every four (4) or five (5) days for four (4) or five (5) months to purchase cocaine. KINCER stated that Thomas obtained approximately ten (10) ounces of cocaine on each trip to HUTSON's residence. KINCER stated that in or about December, 2006, he observed HUTSON in possession of one kilogram of cocaine.

...KINCER stated that Junior STILTNER was the boyfriend of Rhonda HUTSON and they owned a guttering and vinyl business together. KINCER stated that his father, Dewayne Jones, obtained one (1) to 1½ ounces of cocaine several times a day from HUTSON and STILTNER. KINCER stated that Jones would sell several ounces of cocaine a day to Raymond HILLIARD.

... On March 22, 2008, Paul Thomas was shot and killed by Sullivan County, TN Deputy Kevin Morrell following a high speed chase. Seized from Thomas' vehicle following the incident were approximately one (1) ounce of cocaine and three cellular telephones. Contained in one cell phone were the following text messages from telephone number (423) 383-1347 (saved in the Contacts List under Raymond):

> March 14, 2008 at 1:00 a.m. – "It's Ray, Let me o whats up if tonight r not. People wanting. I'm going to have to do something. Thanks. Ray."
> March 18, 2008 at 4:08 a.m. – "I have 2 people waiting. I need to no either way so ill o what to do. Call me please. Raymond."
> March 18, 2008 at 4:43 a.m. – "Paul I have people here that rely on me and I realy on u. Let us no u r ok that nothing has happen u guys, ok. I will come to u I got ur?"

... KINCER stated that HILLIARD broke down the ounces into "8 balls" (1/8 ounce), grams, and "fifties" (½ gram) for resale. KINCER stated that he was at HILLIARD'S residence on one occasion when he observed Sam HUTSON drop off what he believed to be cocaine.

... KINCER stated that he and Paul Thomas were partners in the distribution of cocaine. KINCER stated that he accompanied Thomas to the residence of Rhonda HUTSON on many occasions to purchase cocaine. KINCER stated that he co-mingled his money with Thomas to purchase the cocaine. KINCER stated that he never co-mingled more than $2,000.00 with Thomas' money. KINCER stated that in 2007, Thomas purchased ten (10)ounces of cocaine from HUTSON approximately every four (4) or five (5) days for four (4) or five (5) months. KINCER stated that he and Thomas took the cocaine to Thomas' residence (located in Bristol, VA) and broke it down into smaller quantities for resale. KINCER stated that he would receive one (1) to 1½ ounces out of the ten (10) ounces of cocaine purchased from HUTSON. KINCER stated that Thomas provided him (KINCER) with cocaine for $900.00 per ounce.

The affidavit also contains allegations that cooperating sources purchased cocaine from Raymond Hilliard on December 13, 2007, January 16, 2008, and March 11, 2008.

## II. Analysis

Kincer argues that the Indictment should be dismissed against him because he qualifies as a "juvenile" under the Juvenile Delinquency Act, 18 U.S.C.A. § 5031 *et seq*. (West 2000). The Juvenile Delinquency Act prohibits the prosecution in federal court, except under certain exceptional circumstance, of a violation of federal law committed by a person prior to his eighteenth birthday. *See* 18 U.S.C.A. §5032 (West

2000). Kincer argues that he qualifies as a "juvenile" under the Act because he still has not reached 21 years of age. The Act defines a "juvenile" as "a person who has not attained his eighteenth birthday, or for purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." 18 U.S.C.A. § 5031 (West 2000). The Act defines "juvenile delinquency" as a "violation of a law of the United States committed by a person prior to his eighteenth birthday." 18 U.S.C.A. § 5031. Therefore, the Act's definition of "juvenile" does include persons who have not yet reached 21 years of age, but only if those persons are being prosecuted for an act of juvenile delinquency that occurred before they reached 18 years of age. The government argues that, while the Criminal Complaint sets forth acts taken by Kincer in furtherance of the conspiracy prior to reaching 18 years of age, it is proceeding against him as an adult based on his continued involvement in the conspiracy after he reached age 18.

The Fourth Circuit has addressed the exact issue raised by Kincer in his Motion. In *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984), an 18-year-old defendant in an auto theft conspiracy case argued that the federal district court lacked jurisdiction to admit evidence pertaining to a defendant's acts committed while he was a juvenile. The Fourth Circuit rejected the argument, stating:

> Unlike most federal offenses, conspiracy is a continuing crime. The Juvenile Delinquency Act does not, of course, prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor.

*Spoone*, 741 F.2d at 687. The court found that the government in *Spoone* had presented sufficient evidence from which the jury could infer that the defendant's

involvement in the alleged conspiracy continued after he turned 18. *See* 741 F.2d at 687. The court also held that the jury was entitled to hear evidence showing that the defendant had known of the conspiracy since its inception, which was before he turned 18, although the jury could not consider any acts committed while a juvenile as evidence of his guilt. *See Spoone*, 741 F.2d at 687. *See also United States v. Claiborne*, 92 F. Supp. 2d 503, 514 (E.D. Va. 2000) (government may prosecute an adult for participation in a conspiracy that began prior to the defendant's eighteenth birthday provided that the defendant engaged in some overt act indicating his ratification of the conspiracy after attaining the age of 18; evidence of juvenile acts may not be considered as substantive evidence of guilt, but may be admitted for the limited purpose of putting the defendant's subsequent post-eighteen conduct within the context of the conspiracy).

Thus, if the government can produce evidence in this case that Kincer's involvement in the alleged conspiracy continued after he turned 18, then the government should be allowed to produce evidence of Kincer's involvement in the alleged conspiracy from its inception. Based on the evidence alleged in the Criminal Complaint, it appears that the government can produce evidence from which a jury could infer that Kincer's involvement in this conspiracy continued after he turned 18 in April 2007. That being the case, I will recommend that the Motion be denied.

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The Indictment in this case charges a drug conspiracy beginning on or about January 1, 2003, and continuing until January 13, 2010;
2. Kincer did not turn 18 years old until April 2007;
3. The Juvenile Delinquency Act does not prevent a defendant from being prosecuted for a conspiracy he joined prior to turning 18 years old, if his involvement in the conspiracy continued after turning 18 years old; and
4. It appears that the government can produce evidence that Kincer's involvement in this alleged drug conspiracy continued after he reached 18 years of age.

## RECOMMENDED DISPOSITION

For the reasoning set out above, the undersigned recommends that this court deny the Motion.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

> the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations could waive appellate review.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

DATED: This 1st day of April 2010.

/s *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE